JENNINGS, BEALE & CO. v. J. G. BEALE.

APPEAL BY PLAINTIFFS AND DEFENDANT FROM THE COURT
OF COMMON PLEAS OF ARMSTRONG COUNTY.

Argued October 14, 1891—Decided January 4, 1892.

(*a*) An agreement in writing by the members of a limited partnership,
contemporaneous with the execution of its articles for a fixed term, un-
der the act of June 2, 1874, P. L. 271, provided that, subject to the con-
trol of the majority "in questions relating to the business," a certain
member should have special charge of the mills and manufacturing:

1. Such provision was not inoperative, inter sese, under the provision of
§ 5 of said act directing annual meetings for the annual election of man-
agers, and it created a term of employment for the life of the partner-
ship that could not be terminated by a vote of the majority in number
and value of interests.

2. The superintendent, employed under such contemporaneous agreement,
though he tendered his resignation but withdrew it before it was accepted
and thereafter held himself in readiness to perform his duties, was en-
titled to the salary attached to his employment, until the dissolution of
the partnership.

3. On a bill filed by the other members to restrain the superintendent from
acting as such, and for damages for losses by his default, costs, counsel
fees and expenses incurred by the defendant in independent litigation
with the plaintiffs, are not a proper matter for damages, recoverable in
addition to his salary.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-
COLLUM and MITCHELL, JJ.

Nos. 153, 273 October Term 1891, Sup. Ct.; court below,
No. 69 March Term 1888, C. P.

On December 23, 1887, Jennings, Beale & Co., Limited, B.
F. Jennings, and John Davis filed a bill in equity against Jo-
seph G. Beale, praying upon the facts therein averred that the
defendant be restrained from interfering in any manner with
the business and works of said association, or of any of its le-
gally constituted officers, or from acting or claiming to act in
any way as superintendent of manufacturing for said association.

On January 6, 1888, a preliminary injunction moved for was
refused. On April 23d, on appeal to the Supreme Court, to
No. 42 October Term 1888, the decree of the court below was

Statement of Facts.

reversed, and an injunction awarded restraining the defendant from acting as superintendent of manufacturing for said association, until final hearing, plaintiffs to file bond : See Jennings, Beale & Co.'s App., 2 Mona. 188.   In the meantime, on March 5, 1888, the defendant filed an answer.   A replication having been filed, the cause was referred on May 14, 1888, to *Mr. James P. Colter*, appointed examiner and master.

On August 20, 1888, the plaintiffs filed a supplemental bill. A second supplemental bill was filed by plaintiffs on December 30, 1889, reciting the prior proceedings, and the further fact that, on June 25, 1889, the association of Jennings, Beale & Co., Limited, had been dissolved as of date July 1, 1889, and that liquidating trustees had been appointed; praying for an account and distribution.

On December 30, 1889, the day the second supplemental bill was filed, the defendant filed a cross-bill, wherein he set up that he was entitled to a salary from the partnership association to July 1, 1889, and damages for various matters specified.

The recorded statement of said association, executed October 27, 1886, showed that its capital stock was one hundred and fifty thousand dollars, divided into one hundred and fifty shares; that of these shares Joseph G. Beale held seventy, Benjamin F. Jennings seventy, and John Davis seventy ; that said association was to date from October 1, 1886, and to continue for the term of four and three quarter years therefrom, unless sooner dissolved by a vote of the majority in number and value of interests ; and that of its officers, Joseph G. Beale was superintendent of manufacturing.

Contemporaneous with the execution of the articles of association, the members executed an agreement in writing reciting such execution, and inter alia providing:

" The following shall be the terms and conditions thereof, in addition to those specified in said certificate, to wit:

" 1. The majority in number and value shall decide all questions in relation to the business of said association ; but, subject to such control, the said Joseph G. Beale shall have special charge of the mills and manufacture of such material as they propose to sell ; the said Benjamin F. Jennings shall have special charge of the finances and the purchases of material, and the said John Davis shall perform the duties usually appertaining to a

secretary and treasurer in limited associations. Each of said partners, however, shall give his whole time, skill and attention to the business of the association; and, as a compensation for the services rendered as above provided, the said Beale and Jennings shall each be entitled to draw out of the funds of the association the sum of three thousand dollars per annum, and the said Davis the sum of fifteen hundred dollars per annum, to be charged to expense account.

" 2. All profits shall be divided, and losses borne by the members of said association pro rata, according to the number of shares held by each one."

On September 17, 1890, the master filed a report making the following findings of fact:

### ORIGINAL BILL.

1. There was organized on the twenty-seventh of October, 1886, the firm of Jennings, Beale & Co., Limited, under the act of June 2, 1874, and its supplements, with a capital stock of one hundred fifty thousand dollars, divided into one hundred fifty shares of the par value of one thousand dollars each. At the time of filing the bill, the stock in said limited partnership was held as follows: B. F. Jennings, thirty-five shares; John Davis, ten shares; Robert Flenniken, ten shares; Joseph G. Beale, forty-five shares.

2. The contract constituting said firm was in writing, and consisted of the certificate of partnership dated the twenty-seventh of October, 1886, and a partnership agreement of the same date. [In organizing said partnership I do not find that the said partners placed any limitation upon the term of office of Joseph G. Beale, as superintendent, or of any of the officers named in said partnership agreement, except as provided in said agreement. The said superintendent was not, therefore, on the twenty-seventh day of October, 1886, or on " the seventeenth day of October, 1886, elected superintendent of manufacturing in said association to hold office for one year," as stated in the second paragraph of the original bill, unless the said limited partnership act supersedes the act of the said parties in limiting the term of said office.] [1]

3. That Joseph G. Beale tendered his resignation to said firm on the sixteenth of October, 1887, as follows: . . . . On

Master's Report.

November 22, 1887, a meeting of said firm was held at which all the stockholders were present. Before any action was taken on the said resignation by said meeting, [Joseph G. Beale, who was present, withdrew said resignation by a writing which was placed on the minutes of said meeting, which writing is as follows: . . . . The subsequent action of the other parties, to wit, B. F. Jennings, John Davis and Robert Flenniken, in declaring the office of superintendent vacant, in abolishing said office and devolving the duties thereof upon the chairman, in addition to his other duties, and in adopting a resolution providing that the salary of Joseph G. Beale, as superintendent, should cease forthwith, all was against the protest and without the consent of said Joseph G. Beale. The action of Beale was, not to ask leave to withdraw his resignation, as set forth in the third paragraph of the original bill, but an unequivocal and absolute withdrawal.] [2] They thereby voted to accept the said resignation. The said members, other than Beale, then voted in favor of a resolution abolishing the office of superintendent of manufacturing, and devolving the duties thereof upon the chairman, in addition to his other duties. They at the same time, November 22, 1887, voted for B. F. Jennings, John Davis, Robert Flenniken and J. G. Beale as managers, and B. F. Jennings for chairman, John Davis for treasurer and Robert Flenniken for secretary.

4. Mr. B. F. Jennings proceeded to Leechburgh the next day, to wit, November 23, 1887, to take full charge of the works. A notice was posted notifying all men desiring to be re-employed to apply to George Goodsell; and, so far as Mr. Jennings had power to do so, Mr. George Goodsell was placed in charge as manager. [But there is not a preponderance of testimony supporting the statement in the fourth paragraph, that the defendant was present and consented thereto.] [3] Mr. Beale, during this time, remained about the works, not preventing for a time Mr. Jennings' course in taking charge, but on the eighth of December, 1887, he took full charge again, and continued to act as superintendent until April 27, 1888.

SUPPLEMENTAL BILL.

The proofs do not sustain the averment in the first section of fourth paragraph of plaintiffs' supplemental bill " that from the eighth day of December, 1887, the defendant·managed the

Master's Report.

works of said firm in such a careless, negligent and unskilful manner as to cause great loss and damage to said firm." I find the facts in this respect to be as follows:

1. J. G. Beale, commencing in 1880, had been engaged in the same kind of business, having built in that year as part owner and manager, extensive steel works at Leechburgh, Pa., for making open-hearth steel and reducing it to billets for use in rolling mills. This business he carried on until the spring of 1886, when he commenced a general partnership in the same business with B. F. Jennings, adding to the business that of rolling steel into sheets. Said general partnership continued until October 27, 1886, when this limited partnership was formed. B. F. Jennings having been intimately associated with him in said general partnership prior to October 27, 1886, had means of knowing what qualifications said Beale had for business. [On the twenty-seventh of October, 1886, said Beale was a skilful manufacturer of steel. In the discharge of his duties while he served as superintendent of manufacture for Jennings, Beale & Co., Limited, he was careful, skilful, worked in good faith, and to the best of his ability.] [4] . . . . .

4. The proofs show that during the said period steel was produced, irregular in the degrees of carbon and manganese, and material was turned out from the rolling mill unfit for the purpose for which it was ordered, by reasons whereof reductions were made on the prices thereof, and some of the material was returned. [But the plaintiffs failed to prove such "carelessness, negligence and unskilfulness" on the part of Joseph G. Beale, in the performance of his duties, as makes him alone responsible for such imperfect work, and entitles them to charge him personally with such losses as may have happened through the causes above stated.] [7]

CROSS-BILL.

1. The said Joseph G. Beale was ready, and willing, and anxious at all times to give to Jennings, Beale & Co., Limited, his whole time, skill and attention in the service of said firm until April 27, 1888, when he was enjoined from continuing to serve as superintendent by injunction granted in this case and procured by the plaintiffs. He, however, refrained from entering into any other business, and held himself ready to serve the firm whenever required, until its dissolution July 1, 1889.

Master's Report.

If entitled to salary from November 22, 1887, until July 1, 1889, the amount at the last date is $4,914.29, with interest added from that date.

2. It is a fact, as set forth in the third paragraph of the cross-bill, that the original plaintiffs attempted to remove the open-hearth furnace from Leechburgh to Allegheny City, and that Mr. Beale was put to cost and expense, namely five hundred dollars, in preventing such removal. The cost and expense in that behalf consisted of counsel fees, printing paper-books, traveling expenses, etc.: [See Jennings' App., 2 Mona. 184.]

3. Mr. Beale does not support, by a preponderance of proof, the claims he sets forth in the fourth and fifth paragraphs of his cross-bill.. I therefore find that these claims are not sustained. The proofs show extended experience and competence in B. F. Jennings, in the management of such work. They also show that the plaintiffs acted in good faith in the matter of conducting the ordinary business of the firm, and with the purpose of serving its best interests in doing, in that respect, what said paragraphs set forth.

CONCLUSIONS.

The plaintiffs' main purpose in this controversy was to have Joseph G. Beale restrained from acting as superintendent. They say he should be restrained, first, because he had resigned, and had ratified the action of the stockholders in accepting his resignation. But they say he should be restrained, even if the resignation did not put him out of office, because his term of office was only one year from October 27, 1886, and he was not re-elected. And they say further, even if he were lawfully superintendent, he would have no right to control the mill against the will of the owners thereof, as expressed by the board of managers.

Mr. Beale did tender his resignation, October 14, 1887, to take effect not later than October 25th. The proffered resignation was not acted on by the stockholders before the twenty-fifth of October, and no action was had in relation to it until November 22, 1887. Then there was a meeting of the stockholders to take the matter into consideration. Before action was taken thereon, Mr. Beale withdrew it. After this, the stockholders voted to accept it. As it appears to me, there was no resignation before them when they took this action.

Hence I submit, that such action did not relieve Mr. Beale from office. The mere tendering of his resignation did not put him out. " At common law, as offices are held at the will of both parties, if the resignation of an officer be not accepted, he remains in office: " Bouvier's Law D.; Edwards v. United States, 13 Otto 471; Steel v. Commonwealth, 18 Pa. 451. I do not find that Mr. Beale ever approved or consented to such steps to remove him as were taken by the stockholders after the resignation was withdrawn.

In the present case, the partnership articles fix the term of the partnership at four and three quarters years, from October 1, 1886. Then, it is provided in the supplemental agreement that " the following shall be the terms and conditions thereof, in addition to those specified in said certificate to wit:

" 1. The majority in number and value shall decide all questions in relation to the business of said association; but, subject to such control, the said Joseph G. Beale shall have special charge of the mills and manufacture of such material as they propose to sell; " and, in the latter part of said section; " and, as compensation for said services rendered as above provided, the said Beale and Jennings shall each be entitled to draw out of the funds of the association, the sum of three thousand dollars per annum," etc.

There are five other sections in this supplemental agreement. Take, for instance, § 2: " All profits shall be divided, and losses borne by the members of said association pro rata, according to the number of shares held by each one." A fair construction of this, evidently, is that said section shall control for the whole term of partnership. It appears to me that all these six sections are, alike, the law of the partnership for the full term of its existence. It appears that the parties themselves so regarded it, because at the end of the year, namely, October 27, 1887, no meeting was called, and no steps were taken towards electing officers. In construing an agreement, the courts look particularly to the construction placed upon it by the parties: Gass's App., 73 Pa. 46.

If then, these agreements taken together, fix the term of Mr. Beale's office for the time the partnership was to continue, there is no authority for his removal, by the majority. In Peacock v. Cummings, 46 Pa. 434, cited by the plaintiffs, the de-

fendants were restrained, because the partnership articles did
not give them a definite term.   But the limited partnership act
provides that " there shall be, at least, one meeting of the mem-
bers of the association in each year, at one of which there shall
be elected. . . . , who shall hold their respective offices for
one year and until their successors are duly installed : " While
such is the limitation as to the term of office by the said act
of assembly, there appears to be no prohibition against the
parties making a binding agreement among themselves provid-
ing for a longer term.   I take it in this case, both agreements,
the recorded and the one not recorded, have equal force on the
parties thereto :  Parsons on Part., 232.

The partnership act provides for an annual election, but
does not prohibit re-elections.   A strict compliance with that
law would prevent vacancies, and prevent indefinite drifting,
which might be hurtful to the interests of the individual stock-
holders.   But an agreement by all the stockholders that cer-
tain members may have work as officers in the company at a
stipulated price for more than one year, entirely conforms to
the purpose of keeping the offices filled, and is not necessarily
inconsistent with the act.   Such agreement by all the other
stockholders, might make a very strong inducement to a per-
son to invest his money with them.   It does not appear to me
that this act makes void such agreement, even if it does direct
that the stockholders shall hold an election each year.   Meas-
ured by the act of assembly, the term of office is one year, but
as between the parties themselves they are bound to keep the
person in office as long a time as they have agreed to :  Story
on Part., 336, § 204.

But the plaintiffs claim that, at any rate, the agreement pro-
vides that " the majority in number and value shall decide all
questions in relation to the business of said association."

These stockholders first organized a company and made
stationary certain features.   One stationary feature was the
amount of capital stock, another the place where the furnace
was to be located, another the number of shares to be held
by each stockholder, and another was the designation of their
chairman, superintendent and treasurer at fixed salaries, etc.
Taking the association so organized, the majority in number
and value could control its business.   They could regulate

the running of this figurative machine, but not disjoint it.   It was judicially determined, since this suit was started, that they could not even change the place where the work was to be done.   They certainly could not take from one man a part or all of his stock and give it to another.

The partnership agreement with Mr. Beale was not only that he should have a share of the profits, proportioned to his stock, but that he should have employment at an annual compensation of three thousand dollars.   They gave him, moreover, the right to remain with and help manage the property his money was to help purchase.   They did all this, with no deception on Mr. Beale's part as to his qualifications, but, on the contrary, after an intimate business association with him of one of their number.   With full knowledge of his qualifications, they gave him the right to serve as superintendent as fully as they conceded to him his shares of stock.

The majority did have the right to decide all questions in relation to the business of said association, but in this they decided to take from Mr. Beale his partnership right to serve as superintendent, and give the work to Mr. B. F. Jennings, in addition to the work they originally gave him.   They attempted to abolish the office of superintendent, and assign the duties to the chairman.   Their reason for this, according to their proofs, was that they were dissatisfied with Mr. Beale as superintendent.   They were also dissatisfied with Leechburgh as the location of their works.   They believed that Allegheny City, as a location, would suit better.   But this clause in their agreement did not give them the right to make that change.   To thus vacate Beale's office, would be like taking his stock without his consent, or like changing the character of the business.

It is not uncommonly supposed by the public that the minority of the partners, if they are unequally divided, must submit to the majority.   But this is by no means the case, for as will be seen presently, the majority cannot oblige the minority, except within certain limits.   The first point to determine is, whether the partnership articles, or in the case of a company, the act, charter, or deed of settlement, or regulations by which it is governed, do or do not contain any express provisions applicable to the matter in question; for if they do, such provisions ought to be obeyed: 2 Lindley on Part., 598.

Of course, there is an obligation resting on a partner thus entrusted with office, to perform the duties thereof lawfully, and without breach of trust. But the proofs in this case do not convict Beale of unlawful conduct, or of wantonness or wilfulness in injuring the company's business or property. There was mutual ill-will between the chairman and the superintendent. There were mutual charges of negligence and incompetence. Each of the contentious officers had, however, a large interest in the firm's success, and all the trouble could have been avoided with half the energy in helping, which was so unnecessarily expended by Beale and Jennings, in annoying each other : 2 Lindley on Part., 895.

The preliminary injunction granted in this case, rests presumably, upon the expectation that the main averments of the original bill would be supported by the weight of evidence. It in no way prejudges any of the matters in controversy. The plaintiffs got the restraining order only upon condition of giving an indemnifying bond, as required by the court : Parsons on Part., 311.

I find as a matter of fact and law that Joseph G. Beale was duly constituted superintendent of manufacturing for the firm of Jennings, Beale & Co., Limited, by their partnership agreement, for the full term thereof; that he withdrew his proffered resignation, as such superintendent, before it was accepted by said firm, and that he was not, on that account, relieved from said office ; that he did not ratify or approve the action taken by said firm, in reference to accepting said resignation, and in attempting to establish B. F. Jennings in the duties of said office ; that the agreement of all the other shareholders in said firm, constituting said J. G. Beale superintendent as aforesaid during the term of the partnership, was binding upon them, notwithstanding a shorter limitation of such terms of office in the limited partnership act; that the proofs do not show said Beale to have been guilty of any unlawful conduct, breach of trust, or any conduct that would forfeit his right to hold the office ; that said J. G. Beale, therefore, had lawful right to serve said firm as superintendent, and to receive compensation therefor at the rate three thousand dollars per year, until July 1, 1889, when said firm was dissolved ; and, particularly,

that he had the right to serve as such superintendent as afore-
said, from December 8, 1887, until April 27, 1888 ; that there
were no damages or losses to the said firm, during the time
last stated, or at any time, for which said J. G. Beale is indi-
vidually liable.

I find, therefore, that the preliminary injunction heretofore
granted in this case should be dissolved, and that the original
bill and the supplemental bill filed August 20, 1888, should be
dismissed at the cost of said plaintiffs.

Mr. Beale, in his cross-bill, asks the court to order and di-
rect that the salary due and owing him, to wit, $4,914.29 with
interest, be paid to him out of the assets of said firm, and also
that said plaintiffs, as individuals, be surcharged with the
amount of his costs and expenses by him incurred at No. 89
September Term 1888. And also, to surcharge the individual
plaintiffs with damages as claimed in the fourth and fifth para-
graphs of the cross-bill.

Applying the foregoing findings of fact and law to this
branch of the case, [I find that said J. G. Beale is entitled to
balance of salary, with interest, from July 1, 1889, amounting,
with accrued interest to July 1, 1889, to $5,042.90, and that
this balance should be paid to said J. G. Beale out of the as-
sets of said firm of Jennings, Beale & Co., Limited, as prayed
for in said cross-bill :] [10] Emery v. Steckel, 126 Pa. 171.

[The claim of five hundred dollars, as stated in the third
paragraph of said cross-bill, being the costs and expenses by
J. G. Beale incurred and expended at No. 89 September Term
1888, I do not find to be a proper matter for damages in this
case.] [1a]

[As to the further claims for damages, set forth in the fourth
and fifth paragraphs of the cross-bill, I do not find that said
Beale has made out said claims by the weight of evidence.] [10a]
The said plaintiffs were acting outside of their rights as part-
ners, when they proceeded to dismantle the furnace, and ought
to pay individually to J. G. Beale, in proportion to his interest,
all damages they caused to the furnace in that way. [Said
Beale claims five thousand dollars on that account, but, in that
claim, does not state how much of this is made up on account
of dismantling the furnace. He includes damages by action

Master's Report.

of the flood, by injury from the furnace standing idle, etc. He also claims fifty thousand dollars, damages on account of general mismanagement on the part of B. F. Jennings, including losses to the firm because the furnace was shut down, Bessemer billets used, and the reputation of the mill injured.   There is a general denial of all this, and a preponderance of proof against it.   Besides, as to the ordinary business, the testimony is that Mr. Jennings acted in good faith and did what he thought best for the firm, and this was supported by the majority of the partners.] [11a]  "One partner acting in good faith within the scope of his authority can bind his fellows, and he is not liable for loss from mistake or error in judgment : " Moist's App., 74 Pa. 166.

[The said plaintiffs were also acting outside of their rights, as partners, when they forced Mr. Beale from acting as superintendent, but I find no specific damages on that account.] [12a]

In view of the foregoing findings, I recommend that a decree be entered according to the prayer of said Joseph G. Beale, in his cross-bill, that the sum of $5,042.90, with interest from July 1, 1889, to time of final decree, be paid to said J. G. Beale out of the assets of the firm of Jennings, Beale & Co., Limited, and that the plaintiffs in said original bill pay the costs of this proceeding.

On the thirtieth of December, 1889, the plaintiffs filed a second supplemental bill, reciting the facts of filing the original and first supplemental bill, and the further fact "that afterwards, to wit, on the twenty-fifth day of June, 1889, the said partnership association of Jennings, Beale & Co., Limited, was dissolved by mutual consent of all the shareholders in said association, by an instrument in writing, a true copy of which is hereto annexed, and liquidating trustees were duly appointed for the purpose of disposing of the assets of said firm," etc. The prayer of that bill is that " an accounting be taken of the interests of the respective shareholders in said partnership association, and distribution made in accordance therewith," etc. . . . .

Upon the settlement of the mutual claims, set forth in the foregoing report, it does not appear that there will be further controverted matters between said partners.   Some testimony

Arguments.

was offered by the plaintiffs in their last supplemental bill, but not on the matters in dispute.

Viewing the matter of the final accounting and distribution as belonging to the liquidating trustees, I make no report thereon.

To the foregoing report, the plaintiffs filed exceptions alleging that the master erred:

1–4. In the findings of fact embraced in [ ] [1 to 4]

7, 10. In the findings of fact embraced in [ ] [7 10]

12. In not finding certain facts (1–6) as requested.

The defendant, also, filed exceptions, alleging that the master erred:

1. In the conclusion of law embraced in [ ] [1a]

10–12. In the findings of fact embraced in [ ] [10a to 12a]

Said exceptions having been argued, the court without opinion filed, on May 4, 1891, entered a decree dismissing all the exceptions and confirming the master's report, dissolving the preliminary injunction theretofore granted, dismissing the plaintiffs' bill and first supplemental bill at the costs of the plaintiffs; and ordering that there should be paid to Joseph G. Beale, out of the assets of Jennings, Beale & Co., Limited, the sum of $5,042.90, with interest from July 1, 1890, and that plaintiffs pay the costs of the cross-bill. [13 3a]

Thereupon, the plaintiffs took the appeal to No. 153, specifying that the court erred:

1–12. In dismissing plaintiffs' exceptions, supra. [1 to 12]

13. In the final decree of May 4, 1891. [13]

And the defendant took the appeal to No. 273, specifying that the court erred:

1. In dismissing defendant's exception, supra. [1a]

3. In the final decree of May 4, 1891. [3a]

10–12. In dismissing defendant's exceptions, supra. [10a to 12a]

*Mr. W. K. Jennings* and *Mr. D. T. Watson* (with them *Mr. W. D. Patton*), for the plaintiffs, appellants and appellees.

Counsel cited: (1) Peacock v. Cummings, 46 Pa. 434; Collyer on Part., 104; Story on Part., 123, 169, 172; Bates on Part., 761; Marsh's App., 69 Pa. 30; Loony v. Gillenwaters, 11 Heisk. 133; Hoy v. Gronoble, 34 Pa. 9; McKnight v. Rat-

cliff, 44 Pa. 156; Wolf v. Studebaker, 65 Pa. 459; Penny-packer v. Jones, 106 Pa. 242.   (2) Muldoon v. Rickey, 103 Pa. 110; Head v. Meloney, 111 Pa. 99.

*Mr. Joseph Buffington* and *Mr. M. F. Leason* (with them *Mr. Orr Buffington* and *Mr. Jas. H. McCain*), for the defendant, appellant and appellee.

Counsel cited: (1) Gass's App., 73 Pa. 46.   (2) Winton's App., 97 Pa. 385; Odd Fellows Bank's App., 123 Pa. 356; Souder's App., 57 Pa. 498; McGowin v. Remington, 12 Pa. 56; Socher's App., 104 Pa. 609: 1 Pom. Eq. J., § 37; Allison's App., 77 Pa. 226.

PER CURIAM:

The decree of the court below does not appear to have been satisfactory to either party, as both have appealed.   We think the court was right in sustaining the master.   The case was properly decided.

The decree is affirmed upon each appeal, and the appeals dismissed at the costs of the respective appellants.